1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW BURGESS

Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.: 21-cv-616-MMA (MSB)

**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE**

[Doc. No. 14]

Plaintiff Matthew Burgess ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants City of San Diego (the "City"), Officer Jeremy Huff ("Huff"), and unidentified Does (collectively, "Defendants"). Defendants move to dismiss Plaintiff's fourth, fifth, and sixth cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and move to strike several allegations in the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(f). *See* Doc. No. 14 at 1. Plaintiff filed an opposition to Defendants' motion, to which Defendants replied. *See* Doc. Nos. 17, 18. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 16. For following reasons, the Court **GRANTS**

**IN PART** and **DENIES IN PART** Defendants' motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to strike.

## I. BACKGROUND[1]

Plaintiff's action arises from a demonstration protesting policy brutality. SAC ¶ 2. The demonstration occurred on May 31, 2020 in downtown San Diego. *Id.* ¶ 1. Plaintiff alleges that, at the protest, "Plaintiff stood peacefully, chanted, and made video recordings on his telephone." *Id.* ¶ 3. When Plaintiff saw "an officer try to hit a peacefully protesting woman with a baton," Plaintiff told the officer, "Don't push her." *Id.* ¶ 4. "At that point, Officer [Huff] jabbed [Plaintiff] in the stomach with the baton, leaving bruising and causing pain." *Id.*

Later that day, Plaintiff saw Doe officers "begin shooting kinetic impact projectiles at other peaceful protesters." *Id.* ¶ 5. Plaintiff yelled at the officers to stop, "while continuing to record video on his cellular phone." *Id.* The Doe officers "then purposefully aimed at him and shot him twice in the legs." *Id.* When Plaintiff "turned around to try and flee in order to protect himself," the Doe officers "shot him in the back, causing him to bleed through his shirt." *Id.* Later, Plaintiff was "sprayed with pepper spray or another irritant by [Doe] officer(s)," which caused Plaintiff "significant discomfort and pain." *Id.* ¶ 6.

Based on these allegations, Plaintiff brings seven causes of action: (1) violation of 42 U.S.C. § 1983 against Huff and Does 1–12; (2) violation of 42 U.S.C. § 1983 against the City and Supervisory Doe Defendants 13–25; (3) battery against Huff, the City, and Does 1–12; (4) intentional infliction of emotional distress against all Defendants; (5) violation of the Ralph Act, Civil Code § 51.7, against all Defendants; (6) violation of the Bane Civil Right Act, Civil Code § 52.1, against all Defendants; and (7) negligence

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

against all Defendants.  SAC ¶ 7–66.

## II. <u>MOTION TO STRIKE</u>

**A.    Legal Standard**

A Rule 12(f) motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  For the purposes of this rule, "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur R. Miller, at 711); *see also Whittlestone, Inc.*, 618 F.3d at 974.

The purpose of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  "Motions to strike are generally disfavored, unless 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Haghayeghi v. Guess?, Inc.*, No. 14-cv-00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)); *see also Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)).  In ruling on a motion to strike, the court may only consider the face of the pleading or matters subject to judicial notice.  *See Fantasy, Inc.*, 984 F.2d at 1528.  "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Snap! Mobile, Inc. v. Croghan*, No. 18-cv-04686-LHK, 2019 WL 884177, at *3 (N.D. Cal. Feb. 22, 2019) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).  Ultimately, the

decision about whether to strike allegations is a matter within the district court's discretion. *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing *Fantasy, Inc.*, 984 F.2d at 1528); *see also Whittlestone, Inc.*, 618 F.3d at 974 (quoting *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

**B.    Discussion**

Defendants seek to strike the following five allegations in the SAC:

- <u>Allegation 1</u>: 16. Defendants the CITY OF SAN DIEGO Supervisory DOE Defendants 13-25 were aware of the widespread problems with the use of excessive force within SDPD. Despite this knowledge, Defendants took no action to supervise or discipline officers, or to provide better training as to proper use of force.

- <u>Allegation 2</u>: 17. Defendants the CITY OF SAN DIEGO and Supervisory DOE Defendants 13-25 have a lengthy history of ratifying deputy misconduct by failing to conduct appropriate investigations. They have refused to investigate misconduct and/or taken no remedial steps or actions against officers.

- <u>Allegation 3</u>: 18. There has been an official policy of acquiescence in the wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations. Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

- <u>Allegation 4</u>: 19. Defendant CITY OF SAN DIEGO and Supervisory DOE Defendants 13-25, as a matter of custom, practice, or policy, failed to institute, require, and enforce proper and adequate training and supervision for the use of kinetic impact projectiles by its employees, when the need for such training and supervision was obvious. Defendants' failure to properly train and supervise its employees resulted in a violation of Plaintiff's Fourth Amendment rights.

- <u>Allegation 5</u>: 20. Multiple peaceful protesters were harmed by kinetic impact projectiles and similar "less lethal" weapons fired by SDPD

1
2

officers, which suggests that this was not merely an accident or a bad act by one officer, but rather a widespread deficiency in the policies, practices, and customs of SDPD.

3
4
5
6

Doc. No. 14-1 at 13.  Plaintiff does not oppose Defendants' motion as to Allegations 2 and 3 (paragraphs 17 and 18).  Doc. No. 17 at 6 fn.1.  Accordingly, the Court **GRANTS** Defendants' motion to strike Allegations 2 and 3.

7
8
9
10
11
12
13
14
15
16

Defendants argue Allegations 1 and 4 should be stricken because they are "conclusory" and "immaterial."  Doc. No. 14-1 at 13–15.  The Court agrees that Allegations 1 and 4 are arguably conclusory; however, this is outweighed by the materiality of the allegations to Plaintiff's *Monell* claim.  The allegations relate to whether there was "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity[,]" which is one element of a *Monell* claim.  *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citing *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002).  Accordingly, the Court finds that Defendants have not met their burden to strike these allegations.  The Court therefore **DENIES** the motion to strike Allegations 1 and 4.

17
18
19
20
21
22
23
24
25
26
27
28

Defendants also argue Allegation 5 should be stricken because it is "immaterial and impertinent."  Doc. No. 14-1 at 15.  Defendants posit that "multiple injuries involving multiple people during a single incident does not equate to a longstanding policy, custom or practice sufficient to assert a *Monell* claim."  *Id.*  However, a Rule 12(f) motion arguing the immateriality and impertinence of an allegation is not the appropriate vehicle to attack the overall sufficiency of the pleading.  Instead, "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy*, 984 F.2d at 1527.  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Fantasy, Inc.*, 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur R. Miller, at 711); *see also Whittlestone, Inc.*, 618 F.3d at 974.  Here, Allegation 5 is material to Plaintiff's *Monell* claim.  Plaintiff cannot plead a "longstanding custom or policy" without reference to

1    other activities attributable to Defendants.  Moreover, Defendants fail to explain how the

2    contents of Allegation 5 are impertinent.  "It is not enough that the matter offends the

3    sensibilities of the objecting party if the challenged allegations describe acts or events

4    that are relevant to the action."  *See* 5 Charles A. Wright & Arthur R. Miller, Federal

5    Practice and Procedure § 1382 (3d ed.).  Accordingly, the Court finds that Defendants

6    have not met their burden to strike this allegation.  The Court therefore **DENIES** the

7    motion to strike Allegation 5.

### III. MOTION TO DISMISS

8

9    **A.    Legal Standard**

10        A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro*

11   *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain

12   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

13   8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is

14   plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also*

15   Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic

16   recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further

17   factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

18   550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of

19   underlying facts to give fair notice and to enable the opposing party to defend itself

20   effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

21        In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth

22   of all factual allegations and must construe them in the light most favorable to the

23   nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)

24   (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need

25   not take legal conclusions as true merely because they are cast in the form of factual

26   allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min.*

27   *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations

28   of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."

1    *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  In determining the propriety of a

2    Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for

3    additional facts.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

4         Where dismissal is appropriate, a court should grant leave to amend unless the

5    plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of*

6    *Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127

7    (9th Cir. 2000)).

8    **B.    Discussion**

9         As an initial matter, the Court notes that Plaintiff will have the opportunity through

10   discovery to identify the Doe Defendants.  *Crowley v. Bannister*, 734 F.3d 967, 978 (9th

11   Cir. 2013) (quoting *Gillespie v. Civiletti*, 629 E.2d 637, 642 (9th Cir. 1980)).  Once the

12   identity of a Doe Defendant is ascertained, Plaintiff must seek leave to amend to name

13   the identified Doe Defendant.  However, Plaintiff is advised that if he fails to identify the

14   Doe Defendants during discovery and file an amended complaint, the Doe Defendants

15   will be dismissed from this action.

16        Turning to the present motion to dismiss, Defendants challenge the plausibility of

17   Plaintiff's fourth, fifth, and sixth causes of action.  *See* Doc. No. 14 at 8–12.  The Court

18   assesses each claim in turn.

19        *1.    Claim 4: Intentional Infliction of Emotional Distress*

20        In his fourth cause of action, Plaintiff alleges intentional infliction of emotional

21   distress ("IIED") against all Defendants.  SAC ¶¶ 37–43.  Under California law,

22

23        [a] cause of action for intentional infliction of emotional distress exists when
         there is (1) extreme and outrageous conduct by the defendant with the
24        intention of causing, or reckless disregard of the probability of causing,
         emotional distress; (2) the plaintiff[s] suffer[ed] severe or extreme emotional
25        distress; and (3) actual and proximate causation of the emotional distress by
         the defendant's outrageous conduct.
26

27

28

*Evans v. City of San Diego*, 913 F. Supp. 2d 986, 1000 (S.D. Cal. 2012) (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)); *see also Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Hughes*, 209 P.3d at 976 (quoting *Potter v. Firestone Tire & Rubber Co.*, P.2d 795, 819 (Cal. 1993)).  "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  *Id.* (quoting *Potter*, 863 P.2d at 821).

Defendants argue that Plaintiff fails to allege causation—the third IIED element. *See* Doc. No. 14-1 at 9.  Plaintiff responds that Rule 12(b)(6) is satisfied by his allegation that "Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress."  SAC ¶ 41.

### a.   Officer Huff

Plaintiff alleges that Officer Huff "jabbed him in the stomach with [a] baton" when Plaintiff "saw an officer try to hit a peacefully protesting woman with [the] baton" and Plaintiff "calmly said, 'Don't push her.'"  *Id.* ¶ 4.  Further, Plaintiff pleads that he "suffered severe emotional distress, including symptoms of PTSD and anxiety" that led to "the need to take a leave of absence from work . . ."  *Id.*  ¶¶ 40, 41.

As to the third element, Defendants argue that "there is no description of any highly unpleasant mental reaction after he was allegedly jabbed with the baton but before he 'later saw DOE officers begin shooting kinetic impact projectiles' and before he was allegedly shot."  Doc. No. 14-1 at 9 (citing SAC ¶¶ 4–5).  However, Defendants do not cite, and the Court is unaware of, any case law that requires a plaintiff—at the motion to dismiss stage—to allege precisely when the purported emotional distress began in order to plausibly state an IIED claim.  Instead, the issue of the onset of Plaintiff's alleged emotional distress, and thus, causation as to Officer Huff, is better suited for summary judgment or trial.  Accordingly, the Court is satisfied that Plaintiff sufficiently pleads the

third element.  The Court therefore **DENIES** Defendants' motion with respect to Plaintiff's IIED claim against Defendant Huff.

         b.   <u>The City</u>

     As an initial matter, the Court addresses whether Plaintiff alleges a basis for holding the City vicariously liable for the actions of Officer Huff or Does.  Plaintiff alleges that Defendant City "is liable in *respondeat superior* for the conduct of individual defendant officers [Huff] and [Does 1–25], inclusive, in the course and scope of their employment[.]  SAC ¶ 42.  Plaintiff further alleges that Officer Huff was acting "in his capacity as a police officer employed by the San Diego Police Department ("SDPD")[,]" that SDPD is a department of the City of San Diego, and that Does 1–25 "were officers and/or employees for the San Diego Police Department, acting in their official capacity and under color of law." *Id.* ¶¶ 2–5.  This is sufficient to plausibly plead respondeat superior liability at the motion to dismiss stage. *See Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209 (1991) ("For the doctrine of respondeat superior to apply, the plaintiff must prove that the employee's tortious conduct was committed within the scope of employment.")

     Turning to the IIED claim, Plaintiff pleads that, in addition to the above allegations regarding Officer Huff, the Doe officers "sprayed him with pepper spray", SAC ¶ 40, and "shot him in the back" when he tried to "flee in order to protect himself[,]" *id.* ¶ 5. Plaintiff also pleads that he "suffered severe emotional distress, including symptoms of PTSD and anxiety[.]" *Id.* ¶ 40.

     The Court concludes that Plaintiff sufficiently pleads the third element by alleging that "Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress." *Id.* ¶ 41.  Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's IIED claim to the extent is brought against the City.

    2.   *Claim 5: Violation of the Ralph Act (Cal. Civil Code § 51.7)*

     In his fifth cause of action, Plaintiff alleges violation of the Ralph Act, Cal. Civil Code § 51.7, against all Defendants. *Id.* ¶¶ 44–50.  Section 51.7 of the California Civil

Code ("Ralph Act") provides that "[a]ll persons . . . have the right to be free from any violence, or intimidation by threat of violence committed against their persons or property" on the basis of a variety of protected characteristics, including race, gender, religion, and political affiliation.  Cal. Civ. Code §§ 51.7, 51(b).  To state a claim under the Ralph Act, a plaintiff must establish the following:

> (1) that the defendant threatened or committed violent acts against the plaintiff or his or her property; (2) that a motivating reason for the defendant's conduct was his or her perception of [plaintiff's protected characteristic]; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff harm.

*Rodriguez v. County of Contra Costa*, No. C 13-02516 SBA, 2013 U.S. Dist. LEXIS 158511, at *16–17 (N.D. Cal. Nov. 1, 2013) (citing *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 470 (2007)).

### a.   Officer Huff

Defendants argue that the "operative complaint is void of any description of how Officer Huff was motivated by his perception of a protected characteristic."  Doc. No. 14-1 at 10.  The Court agrees that Plaintiff fails to sufficiently plead the second element.  Plaintiff alleges that:

> A substantial motivating reason for Defendants' conduct was Plaintiff's political affiliation and/or Defendant's perception of Plaintiff's political affiliation. Specifically, the substantial motivating reason for their conduct was Plaintiff's affiliation with the Black Lives Matter movement, which constitutes a political affiliation under the Ralph Act.

SAC ¶ 46.  Political affiliation is a protected characteristic under the Ralph Act.  Cal. Civ. Code § 51.7 ("All persons within the jurisdiction of this state have the right to be free from . . . threat of violence . . . because of political affiliation . . . .").  However, as his only support for this allegation, Plaintiff alleges that "[t]he SDPD's hostile attitude

toward individuals affiliated with Black Lives Matters was not only demonstrated in their actions towards the protestors that day, but also has been clear in other SDPD officer actions." SAC ¶ 46. Plaintiff provides two examples of other incidents to "demonstrate that SDPD has had a culture of opposition to the Black Lives Matter movement." *Id.* ¶ 47. But as both of Plaintiff's examples appear to follow the incident alleged in this case and are silent as to Officer Huff's involvement, these allegations alone fail to provide sufficient support for Plaintiff's claim. *See id.* Moreover, Plaintiff's allegation that the SDPD, at large, has a culture of opposition to the Black Lives Matter movement also fails to provide sufficient support for the claim that *Officer Huff's* alleged actions were motivated by Plaintiff's political affiliation. *See id.*

Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Ralph Act claim to the extent it is brought against Officer Huff.

### b.   The City

Plaintiff does not allege any basis for holding the City either directly or vicariously liable for a Ralph Act violation based upon the actions of Officer Huff or Does. Accordingly, the Court **DISMISSES** Plaintiff's Ralph Act claim against the City. *See Lopez v. County of Los Angeles*, No. CV 15-01745 MMM (MANx), 2015 U.S. Dist. LEXIS 82918, at *7 (C.D. Cal. June 25, 2015) (dismissing a claim against a public entity where plaintiffs failed to allege a basis for direct or vicarious liability in their complaint).

### 3.   Claim 6: Violation of the Bane Civil Rights Act (Cal. Civil Code § 52.1)

In his sixth cause of action, Plaintiff alleges a violation of the Bane Civil Rights Act, Cal. Civil Code § 52.1 (the "Bane Act"), against all Defendants. SAC ¶¶ 51–61. The Bane Act "prohibits interference or attempted interference with a person's rights under federal or California law by 'threats, intimidation, or coercion.'" *Wyrzykowski v. County of Marin*, No. 3:14-cv-03825-LB, 2015 U.S. Dist. LEXIS 74518, at *11 (N.D. Cal. June 9, 2015) (quoting Cal. Civ. Code § 52.1(a)).

1
2
3
4

> Under Section 52.1, 'threat' [ ] involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm[,] '[i]ntimidation' involves putting in fear for the purpose of compelling or deterring conduct[,] and 'coercion' is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

5
6
7

*Bolbol v. Feld Entm't, Inc.*, No. C 11-5539 PSG, 2013 U.S. Dist. LEXIS 9800, at *32 (N.D. Cal. Jan. 23, 2013) (internal quotation marks and citation omitted).

8
9
10
11
12
13
14
15
16
17

The Ninth Circuit has ruled that "[t]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Id.* (quoting *Cornell v. City and Cnty. of San Francisco*, 225 Cal. Rptr. 3d 356, 382–83 (Cal. Ct. App. 2017). Instead, the Bane Act requires a specific intent to violate a plaintiff's rights. *See Reese v. City of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell*, Cal. Rptr. 3d at 384). To demonstrate specific intent, Plaintiff must establish that: (1) "the right at issue [is] clearly delineated and plainly applicable under the circumstances of the case," and (2) the defendant "commit[ted] the act . . . with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Id.* at 803.

18
19
20
21
22
23
24
25
26

Here, Plaintiff alleges that:

> By threats, intimidation, and/or coercion, -- specifically by jabbing him with a baton, shooting him with 12-gauge bean bag rounds, and spraying him with an irritant -- Defendants HUFF, the CITY, and DOES 1-25, inclusive, intentionally interfered with or attempted to interfere with Plaintiff's First Amendment rights. These actions were taken in order to prevent Plaintiff from continuing to protest, make a videorecording of the protest, and speak out at the protest[]. Thus, Defendant exerted excessive force against Plaintiff not simply to interfere with his right to be free from excessive force, but against his separate, affirmative federal and state constitutional rights of free speech and assembly.

27
28

SAC ¶ 53. Defendants argue that Plaintiff fails to allege any "threats, intimidation or coercion" independent of the underlying constitutional violation. *See* Doc. No. 14-1 at

11.  Defendants alternatively argue that Plaintiff fails to allege a specific intent to violate his rights.  Doc. No. 18 at 4.

### a.  Officer Huff

Plaintiff sufficiently pleads the first element of specific intent by alleging that Defendant Huff "jabbed him in the stomach with [a] baton[,]" SAC ¶ 4, thus interfering with his "rights of free speech and assembly under the U.S. and California constitutions[,]" *id.* ¶ 52–53; *see, e.g.*, *Lucha Unida de Padres y Estudiantes v. Unknown Green*, 470 F. Supp. 3d 1021, 1038–39 (D. Ariz. July 1, 2020) (citing *N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984) ("The First Amendment protects demonstrations and protest marches in public spaces.").  Plaintiff also sufficiently pleads the second element of specific intent by alleging that Defendant Huff's actions were "taken in order to prevent Plaintiff from continuing to protest" and that he "intentionally interfered with or attempted to interfere with Plaintiff's First Amendment rights."  SAC ¶ 53.  Accordingly, the Court **DENIES** the motion to dismiss Plaintiff's Bane Act claim against Defendant Huff.

### b.  The City

It is unclear from the SAC whether Plaintiff seeks to hold the City directly liable under the Bane Act.  As part of his sixth cause of action, Plaintiff alleges that the City "condoned, approved of, directed, and encouraged the use of excessive unlawful force at the May 31, 2020 protest."  *Id.* ¶ 56.

Other district courts have held that a government entity cannot be directly liable under the Bane Act.  *See Lopez*, 2015 WL 3913263, at *9 (holding that public entities cannot be held directly liable under the Bane Act because Cal. Gov't Code § 815, the Government Claims Act, does not permit a municipal defendant to be sued absent a statute permitting the imposition of direct liability); *see also Valdez v. City of San Jose*, 2013 WL 6108052, at *14 (N.D. Cal. Nov. 18, 2013) (holding the same); *Gonzalez v. County of Los Angeles*, 2008 WL 2951272, at *3 (C.D. Cal. July 28, 2008) (holding similarly); *cf. Reese*, 888 F.3d at 1040–41 ("Claims under section 52.1 may be brought

against *public officials* who are alleged to interfere with protected rights . . . .") (emphasis added) (citing *Venegas v. County of Los Angeles*, 63 Cal. Rptr. 3d 741, 753 (Cal. Ct. App. 2007)).

That said, Plaintiff alleges vicarious liability: "Defendant [City] is liable in *respondeat superior* for the conduct of individual defendant officers [Huff] and [Does 1–25], inclusive, in the course and scope of their employment[.]"  SAC ¶ 61.  For the same reasons described *supra* Part III.B.1.b regarding the City's potential respondeat superior liability with respect to the IIED claim, the Court concludes that Plaintiff plausibly pleads respondeat superior liability at the motion to dismiss stage.

Turning to the elements of a Bane Act claim, Plaintiff sufficiently pleads the first element of specific intent against the City.  In addition to the above allegations regarding Officer Huff, he alleges that Doe officers "sprayed him with pepper spray", *id.* ¶ 40, and "shot him in the back" when he tried to "flee in order to protect himself," *id.* ¶ 5, thus interfering with his "rights of free speech and assembly under the U.S. and California constitutions[,]"  *id.* ¶ 52–53.  Plaintiff also sufficiently pleads the second element of specific intent by alleging that the actions of Defendant Huff and Does were "taken in order to prevent Plaintiff from continuing to protest" and that Defendants "intentionally interfered with or attempted to interfere with Plaintiff's First Amendment rights."  *Id.* ¶ 53.

Accordingly, the Court **DENIES** the motion to dismiss to the extent the claim is brought against the City through the imposition of vicarious liability.

\*\*\*

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to strike.  The Court **STRIKES** Allegations 2 and 3.  The Court further **DISMISSES** Plaintiff's Ralph Act claim with leave to amend.  If Plaintiff wishes to file a third amended complaint curing the deficiencies noted herein, he must do so on or before **January 6, 2022**.

**IT IS SO ORDERED.**

Dated:  December 7, 2021

HON. MICHAEL M. ANELLO
United States District Judge